CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2015 OCT -9 PM 3: 34
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JESUS MANUEL DIAZ, Institutional ID No. 40044051, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 1:14-CV-200-BL |
| FEDERAL BUREAU OF PRISONS, *et al.*, | § § § § | |
| Defendants. | § | Assigned to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Jesus Diaz, proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 on December 24, 2014.[1] He brought various claims against various prison guards and administrators at the Big Spring Correctional Institution - Flightline Unit (Flightline) in Big Spring, Texas. The United States District Judge reassigned the case to this Court for further proceedings. (Doc. 13). This Court held a hearing under the authority of *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) to better clarify Plaintiff's disjointed factual allegations. (Doc. 17). Plaintiff has not consented to proceed before a United States Magistrate Judge. After considering Plaintiff's amended pleadings and his testimony at the *Spears* hearing, this Court recommends Plaintiff's complaint be dismissed.

## BACKGROUND

Plaintiff arrived at Flightline June 19, 2009. Since then, he has been working to contest his conviction of possession with intent to distribute 1000 kilograms or more of marijuana in the United States District Court for the District of New Mexico. Represented by an attorney, Plaintiff

---

[1] Plaintiff filed an amended complaint February 16, 2015.

appealed his conviction to the Tenth Circuit Court of Appeals, which affirmed the District Court. *United States v. Diaz*, 356 F.App'x 117 (10th Cir. 2009) (unpublished). Plaintiff then moved to vacate, set aside, or correct his sentence, which the District Court denied, and Plaintiff moved for certificate of appealability, which the Tenth Circuit denied. *United States v. Diaz*, 598 F.App'x 591 (10th Cir. 2015). Plaintiff has petitioned the Supreme Court for certiorari, which, as of October 2, 2015, has been "Distributed for Conference of October 16, 2015." The history of Plaintiff's criminal conviction is relevant to the present civil rights complaint because his complaint alleges he was denied access to the courts regarding this criminal conviction on different occasions and in different ways. As to Plaintiff's other allegations, the Court notes that Plaintiff's complaint, amended complaint, and approximately eight "Notices" filed with the Court are effectively incomprehensible; distinguishing what claim is being brought and against whom it is being brought is very difficult. Plaintiff combines piecemeal legal phrases with an unclear, occasionally fanciful chronology of facts. For example, Plaintiff alleges he was at times an undercover operative for the National Security Administration, hired to run drugs from the United States into Mexico. Accordingly, much of the following was gleaned from Plaintiff's testimony in his own words at the *Spears* hearing. At such hearing, Plaintiff confirmed that the below-listed defendants were the only defendants he wished to pursue in this case, and only under the below-listed theories of liability. Plaintiff's pleadings include facts and characters outside these, but Plaintiff confirmed to the Court that he only wishes to name these defendants and pursue these causes of action in this case.

## DISCUSSION

In an *in forma pauperis* prisoner civil rights action against a governmental entity, officer, or employee, the Court is required under 28 U.S.C. §§ 1915–1915A to dismiss the complaint or

any portion of the complaint which is frivolous or malicious or fails to state a claim upon which relief may be granted. *See Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (internal quotation marks omitted); *accord Neitzke v. Williams*, 490 U.S. 319, 327 (1989). "A complaint is factually frivolous when the facts alleged are fantastic or delusional scenarios or the legal theory upon which a complaint relies is indisputably meritless." *Harris*, 198 F.3d at 156 (internal quotation marks and citations omitted). The Court considers each defendant and cause of action separately.

*Barker*

Two similar events occurred, the first on November 25, 2014, the second on February 12, 2015. Defendant "J. Barker," a corrections officer, was conducting room inspections on both occasions. Plaintiff had piled dirty laundry and some paperwork, including "legal paperwork" on an empty bunk in his cell. Barker instructed Plaintiff to clean his area and store the items according to prison protocol. Barker told Plaintiff he had five minutes or she would confiscate the items and give him a write-up. Plaintiff told Barker, "Fine, give me a write-up." Barker wrote Plaintiff up and confiscated the items, both times confiscating what Plaintiff calls "legal paperwork." One or both times, Plaintiff claims Barker included a false statement in her official reports of the incident. Plaintiff does not clarify what this false statement actually was. Plaintiff claims Barker was trying to get him sent off the unit in retaliation of a request Plaintiff had previously made to see an orthopedic surgeon, although Plaintiff provides no evidence for such a conclusion as to Barker's motives. That is, Plaintiff alleges two claims against Barker: a denial of access to the courts claim via confiscation of "legal papers," and a retaliation claim.

"It has long been recognized that prisoners generally enjoy a constitutional right of access to the courts." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). "This right of access for prisoners is not unlimited, however; rather, it encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.'" *Id.* at 310–11 (quoting *Lewis v. Casey*, 518 U.S. 343, 356 (1996)). To prevail on a claim of denial of access to courts, a prisoner must show "actual injury." *Lewis*, 518 U.S. at 348–52. "Such an injury occurs when an inmate 'shows that an actionable claim . . . which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented.'" *Birl v. Hicks*, 569 F.App'x 216, 217 (5th Cir. 2014) (unpublished) (per curiam) (mem. op.) (quoting *Lewis*, 518 U.S. at 356).

As detailed above, Plaintiff has collaterally attacked his conviction to the highest possible level, the United States Supreme Court. He has been represented by an attorney at every stage. He concedes his attorney was able to, and did in fact, file pleadings and documents with relevant courts. Plaintiff can point to no pleading adjudged insufficient in any proceeding as a result of any act of any defendant in this suit. Plaintiff repeatedly alleges that he sent various documents to the Tenth Circuit Court of Appeals, and as he was represented by an attorney, that court would not file such documents; instead, the court would forward the documents to Plaintiff's attorney. Plaintiff cannot demonstrate how such sequence of events amounts to a claim of constitutional dimension. Plaintiff can point to no "actual injury" that he has suffered as a result of any alleged denial of access to the courts. This failure is fatal to all Plaintiff's denial of access claims against whatever defendant. *See, e.g., Lewis*, 518 U.S. at 356. Accordingly, such claims must be dismissed.

"The elements of a claim under a retaliation theory are the plaintiff's invocation of a 'specific constitutional right,' the defendant's intent to retaliate against the plaintiff for his or her

exercise of that right, a retaliatory adverse act, and causation, *i.e.*, 'but for the retaliatory motive the complained of incident would not have occurred.'" *See Johnson*, 110 F.3d at 314 (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)). "This places a significant burden on the inmate. . . . The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1166 (internal quotation marks and citations omitted).

Plaintiff alleges that the day(s) he was written up he was working on legal matters, exercising his right of access to the courts, as discussed above. Thus, the Court assumes, *arguendo*, that Plaintiff has invoked a specific constitutional right. The Court further assumes, *arguendo*, that Plaintiff has shown an adverse act. Plaintiff testified that as a result of Barker's write-up, he lost commissary and phone privileges for 30 days. But the Court cannot assume, nor is it able to discern, any retaliatory intent on the part of Barker. Plaintiff concedes that he refused to clean up his cell when asked by Barker to do so, and does not contest that he was not in compliance with legitimate prison regulations. As the Fifth Circuit has stated, though the presence of a legitimate prison disciplinary report is not an absolute bar to a retaliation claim, "the existence of same, properly viewed, is probative and potent summary judgment evidence." *Woods*, 60 F.3d at 1166. Plaintiff fails to show Barker had any intent to retaliate, and concomitantly fails to show that but for the retaliatory motive, the write-up would not have happened. *Johnson*, 110 F.3d at 314. Plaintiff's "[m]ere conclusory allegations of retaliation" will not suffice, and his retaliation claim against Barker must fail. *Woods*, 30 F.3d at 1166.

*Hansen and Ramirez*

Plaintiff claims he reported Barker's "false statement" to an unnamed lieutenant, who represented that the false statement would be brought to the attention of the Unit Disciplinary

Committee (UDC) chairpersons, Defendants Hansen and Ramirez. Plaintiff alleges Defendant Hansen is a relative of Senior District Judge Leroy Hansen in the District of New Mexico, and therefore represents a conflict of interest to Plaintiff. As to Officer Ramirez, Plaintiff claims Ramirez "refused to hear my side of the story," and refused Plaintiff's request to release funds to purchase stamps so Plaintiff could send legal documents to the Tenth Circuit Court of Appeals. Construing Plaintiff's complaint liberally, Plaintiff has asserted a claim of denial of access to the courts against Ramirez.

Again, Plaintiff does not contest that at all points relevant in this suit, he was (and currently is) represented by an attorney he retained. Plaintiff does not contest his attorney was able to and did file pleadings on Plaintiff's behalf. Plaintiff can show no "actual harm" suffered as a result of Ramirez's actions or omissions. The conclusion that Officer Hansen represents a conflict of interest because he is a relative of a judge with no discernable connection to Plaintiff's criminal conviction is utterly frivolous. *See, e.g., Eason v. Thaler*, 14 F.3d 8, 9 n. 5 (5th Cir. 1994). Plaintiff himself conceded that he simply assumed the two were related because they had the same last name. Plaintiff brings no other evidence or claims against Hansen. Plaintiff's unsupported, conclusory allegations against Hansen and Ramirez must fail.

*McKinley*

Plaintiff claims Defendant McKinley denied his request for an orthopedic mattress, refused to let Plaintiff take fruit out of the kitchen, and refused to let Plaintiff have sack lunches. Plaintiff claims he is hypoglycemic and requires fruit as part of his diet. Liberally construed, Plaintiff alleges a claim of deliberate indifference to a serious medical need against McKinley.

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A prison official acts with deliberate

indifference only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks omitted). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.* An inmate "must show that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Thomas v. Carter*, 593 F.App'x 338, 362 (5th Cir. 2014) (internal quotation marks omitted) (quoting *Gobert*, 463 F.3d at 346).

At his *Spears* hearing, Plaintiff testified that each request he submitted to prison authorities, be it for an orthopedic mattress, a back brace, or specific medication, was refused by the prison physicians. The reason given to Plaintiff was not that such accommodations were never made; indeed, Plaintiff testified that many other inmates received sack lunches, including diabetic inmates and hypoglycemic inmates, for example. Plaintiff testified that prison medical staff simply did not agree with his conclusion that he needed any of his requested items. Importantly, Plaintiff did not allege that any medical professional opined that he required these various accommodations. It was simply Plaintiff's opinion that he required them. Additionally, Plaintiff did not testify that McKinley was the individual making the medical determination to deny his various requests. Plaintiff testified that a physician, "Dr. Dee," made the medical determination to refuse Plaintiff's requests.[2] McKinley was simply the prison employee in charge of implementing the medical opinions given to him. According to Plaintiff's testimony, McKinley simply followed the orders of a prison physician who was of the opinion that Plaintiff did not require the medical

---

[2] It is not clear whether Dr. Dee denied all of Plaintiff's requests for medical accommodations, or whether other medical staff made the decision that Plaintiff did not require the accommodation.

accommodations Plaintiff himself thought he required. At best, what Plaintiff has shown is a disagreement with the opinions of medical professionals at the prison. That Plaintiff's family members may have written letters to prison officials also complaining of Plaintiff's medical care does not bring such care to the level of wanton disregard toward Plaintiff. *See Gobert*, 463 F.3d at 346. Plaintiff has failed to show that McKinley acted with deliberate indifference to any serious medical needs of Plaintiff, and Plaintiff's claims of such must be dismissed.

*Warden Sims*

Plaintiff claims Defendant Warden Sims received letters from the Mexican Consulate and Plaintiff's attorney complaining about Plaintiff's level of care at Flightline. Plaintiff states Sims failed to "get him help." That is, the nature of Plaintiff's claim against Warden Sims is similar to the claim against McKinley above, namely deliberate indifference to a serious medical need.

Plaintiff testified that Dr. Dee (and perhaps other medical professionals) made medical determinations with which Plaintiff disagreed. It is of no moment that, like with Plaintiff's family members writing letters to McKinley, Plaintiff's retained lawyer and an individual from the Mexican Consulate may have written letters to Sims. Plaintiff testified that in response to the letters he received, Sims stated he would talk with the prison doctors. Plaintiff conceded that he did not know whether Sims had in fact talked to the doctors or what the doctors may have said. Plaintiff further conceded that it was not Sims making medical determinations; rather, Sims was merely implementing the opinions of qualified medical professionals. Simply put, Plaintiff's allegations are insufficient to show that Sims knew of and disregarded a substantial risk to Plaintiff's serious medical needs. *See generally Gobert*, 463 F.3d at 346. Therefore, Plaintiff's claims against Sims must be dismissed.

*Captain Cruz*

During a portion of his time at Flightline, Plaintiff enjoyed a prison cell to himself. At some point, a roommate was placed in Plaintiff's cell. Plaintiff told Cruz that he did not approve of his cellmate situation and Plaintiff claims Cruz "didn't listen to [Plaintiff]." Cruz allegedly told Plaintiff, "It's either your cell with your roommate or you can go to the SHU." Additionally, Plaintiff claims Captain Cruz "submitted a false report" against Plaintiff. It is unclear what the substance of the report was, whether the "false report" related to Plaintiff's complaint about his cellmate, or to whom the "false report" was submitted. Nor did Plaintiff supply evidence of such report. Finally, Plaintiff did not assert he had experienced any consequences as a result of this allegedly false report. Simply put, Plaintiff has failed to show he had a cognizable constitutional interest which was violated by Cruz. *See, e.g., Eason*, 14 F.3d at 9 n. 5. Accordingly, Plaintiff's complaint against Cruz must be dismissed.

*Unnamed Captain*

Finally, in his amended complaint, Plaintiff recounts a story where he was pushing a box of legal papers in a wheelchair and was told by an unnamed Captain to move the box. Plaintiff told the Captain he was in pain and could not comply. The Captain then escorted Plaintiff to the SHU, and apparently kneed Plaintiff in the back or side several times. The Captain then confiscated some of the contents from Plaintiff's box of papers. Following this incident, Plaintiff spent forty-five days in the SHU.

Despite these allegations, Plaintiff's amended complaint did not list the Captain or any other person involved in this story as a defendant, and did not allege any claims against them. At his *Spears* hearing, Plaintiff confirmed that despite including this story in his amended complaint, he did not wish to bring any claims against any of the individuals involved in the story.

## CONCLUSION

In sum, Plaintiff has failed to bring a claim against a named defendant which is not frivolous or malicious. *See Harris,* 198 F.3d at 156. Accordingly, 28 U.S.C. §§ 1915–1915A demand dismissal of this suit.

**IT IS, THEREFORE, RECOMMENDED** that Plaintiff's claims against all defendants be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain

**SO ORDERED.**

Dated October 9th, 2015.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**